# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROGER SHANE PEBSWORTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-cv-644-TCK-FHM |
| | ) |
| SPIRIT AEROSYSTEMS, INC., | ) |
| a foreign corporation, and | ) |
| | ) |
| JORDAN C. KENTZLER, | ) |
| individually, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Count Six of Plaintiff's Complaint ("Motion to Dismiss") (Doc. 14) pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the foregoing reasons, the Motion to Dismiss is **GRANTED**.

## I. Factual Allegations

Plaintiff Roger Shane Pebsworth ("Plaintiff") was employed by Defendant Spirit AeroSystems, Inc. ("Spirit") from February 2010 to February 2016. (Compl. ¶ 7, Doc. 2-2.) On January 17, 2016, Plaintiff injured an ulnar nerve at work. (*Id.* ¶ 9-10.) Plaintiff immediately reported the injury to his supervisor, Bryan Waller ("Waller"). (*Id.* ¶ 10.) Waller told Plaintiff that because it was close to the end of the work shift, he would fill out the appropriate injury reporting forms the next day, although he never did so. (*Id.* ¶ 16.) Spirit later refused Plaintiff permission to leave work to seek medical treatment. (*Id.*)

On January 25, 2016, Waller instructed Plaintiff to attend a meeting with Defendant Jordan C. Kentzler ("Kentzler"), the Human Resources Supervisor. (*Id.* ¶¶ 12, 47.) When Plaintiff

1

entered the meeting, a security guard of Spirit immediately frisked him for weapons. (*Id.* ¶ 13.) Kentzler also asked Plaintiff to sign a blank statement, which Plaintiff refused to do. (*Id.*) Plaintiff repeatedly asked Kentzler for an explanation for this treatment, but Kentzler did not answer. Instead, Kentzler asked Plaintiff about criminal conduct, as well as firearms and weapons that he owned, and required Plaintiff to answer the questions. (*Id.* ¶ 14.) At the end of the meeting, Kentzler terminated Plaintiff. (*Id.* ¶ 14.)

On June 3, 2016, Plaintiff filed his Petition against Spirit and Kentzler in Creek County District Court. In his Petition, Plaintiff alleges (1) Family and Medical Leave Act ("FMLA") Interference; (2) FMLA Retaliation; (3) Assault; (4) Battery; (5) False Imprisonment; (6) Intentional Infliction of Emotional Distress ("IIED"); and (7) Malicious Interference with a Contractual Relationship. (Doc. 2-2.) Counts (1) through (6) are alleged against Spirit, and Count (7) is alleged against Kentzler.

Spirit was served with a copy of the Petition and Summons on September 29, 2016. On October 18, 2016, Spirit timely removed this case from Creek County District Court pursuant to 28 U.S.C. § 1441. It is undisputed that this Court has original jurisdiction over Plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331. (*Id.*) The Court has supplemental jurisdiction over Plaintiff's remaining state law claims, including the IIED claim, pursuant to 28 U.S.C. § 1367. (*Id.*) On November 15, 2016, Spirit filed its Motion to Dismiss. (Doc. 14.)

## II. Applicable Law

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).[1] "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility" to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In considering a motion to dismiss under Rule 12(b)(6), the Court generally may not consider facts outside of those alleged in the complaint.[2]

---

[1] Plaintiff cites the more lenient pleadings standard under Oklahoma state law. *See Rogers v. QuikTrip Corp.*, 230 P.3d 853, 856 (Okla. 2010) (denying a motion to dismiss unless it is "without doubt that the plaintiff can prove no set of facts in support of the claim for relief." However, it is well-established that the federal pleading standard applies even when a federal court applies substantive state law. *See Rachner v. Westlake Nursing Home Ltd., P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017).

[2] To the extent that Plaintiff's Response to Defendant's Motion to Dismiss (Doc. 40) references factual allegations beyond the scope of Plaintiff's Complaint, the Court has disregarded these allegations, as "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss." *In re Qwest Commuc'n. Int'l, Inc. Secs. Litig.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. Jan. 13, 2004).

B.  **Intentional Infliction of Emotional Distress**

Oklahoma recognizes IIED as an independent tort. *Eddy v. Brown*, 715 P.2d 74, 76 (Okla. 1986). In order to state a claim for IIED, a plaintiff must allege facts showing: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer emotional distress; and (4) the plaintiff's emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991) (applying Oklahoma law). IIED does not provide redress for every invasion of emotional serenity or every anti-social act that may produce hurt feelings. *Miller v. Miller*, 956 P.2d 887, 900 (Okla. 1998). Rather, the emotional distress must be so severe that no reasonable person could be expected to endure it. *See Robbins Motorsports, L.L.C. v. Nat'l Fire & Marine Ins. Co.*, No. CIV-10-245, 2011 U.S. Dist. LEXIS 59365, *12-13 (N.D. Okla. June 3, 2011) (internal citations omitted).

Oklahoma law directs the district court to act as a "gatekeeper" and make an initial determination about the outrageousness of the defendant's conduct, as well as whether severe emotional distress can be found, before sending the claim to a jury. *See Bingaman v. Spirit Aerosystems, Inc.*, No. 14-CV-677-GKF, 2015 U.S. Dist. LEXIS 183267, at *7 (N.D Okla. Feb. 4, 2015) (evaluating a motion to dismiss); *Johnson v. ORS Nasco, LLC*, No. 13-CV-777-JED, 2014 U.S. Dist. LEXIS 197073, *1 (N.D. Okla. Sept. 30, 2014) (evaluating a motion to dismiss). To satisfy the "extreme and outrageous" element, a plaintiff must prove the defendant's conduct was so extreme and outrageous as to be beyond all possible bounds of decency. *Eddy*, 715 P.2d at 77 ("Conduct which, though unreasonable, is neither beyond all possible bounds of decency in the setting in which it occurred, nor is one that can be regarded as utterly intolerable in a civilized community, falls short of having actionable quality.") (quotations omitted). Oklahoma courts

4

adhere to the narrow standards set forth in Comment d to § 46 of the Restatement (Second) of Torts:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Breeden v. League Servs. Corp.*, 575 P. 2d 1374, 1376 (Okla. 1978) (citing Restatement (Second) of Torts § 46, cmt. d)).

### III.  Analysis

Spirit contends that Plaintiff's Petition fails to allege facts sufficient to establish any of the elements of an IIED claim, particularly the "extreme and outrageous" element. Plaintiff alleges that Spirit's extreme and outrageous conduct consists of failing to fill out the appropriate injury-reporting forms, prohibiting Plaintiff from leaving work for medical attention, terminating Plaintiff for a pretextual reason, unlawfully searching Plaintiff, and creating a hostile work environment, all in violation of his FMLA rights. Plaintiff also alleges that Spirit disregarded Plaintiff's rights when a security guard employed by Spirit frisked Plaintiff without his consent, engaging in assault and battery, and that Spirit falsely imprisoned him by detaining him in the meeting with Kentzler on January 25, 2016.

Workplace harassment rarely rises to the level of extreme and outrageous conduct. *See Bingaman*, 2015 U.S. Dist. LEXIS 183267, at *7 (internal citations omitted). In fact, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct in the workplace only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff. *See Fifer v. City of Tulsa*, No. 12-CV-408-CVE, 2012 U.S. Dist. LEXIS

144363, at *2 (N.D. Okla. Oct. 2, 2012) (collecting cases); *compare Computer Publs., Inc. v. Welton*, 49 P.3d 732, 736 (Okla. 2002) (IIED claim was sufficient to survive summary judgment where a plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move apartments, and repeatedly change her phone number); and *Durham v. McDonald's Rests. Of Okla., Inc.*, 256 P.3d 64, 66-68 (Okla. 2011) (IIED claim was sufficient to survive summary judgment where the plaintiff was sixteen years old, and his supervisor refused to allow him to take a break to take anti-seizure medication three times, and called plaintiff a "f…ing retard") *with Mirzaie v. Smith Cogeneration, Inc.*, 962 P.2d 678 (Okla. Civ. App. 2000) (an employee whose manager made derogatory sexual remarks about him, woke him up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding did not state a claim for IIED); and *Chance v. City of Tulsa*, No. 14-CV-449-CVE, 2014 U.S. Dist. LEXIS 156108 (N.D. Okla. Nov. 3, 2014) (a female plaintiff failed to state a claim for IIED when she was required to pose for a photograph as part of an interview, unlike male applicants, and her interviewer compared that photograph to nude photographs of her that he had obtained from an individual with whom she had a romantic relationship).

Construing Plaintiff's allegations in the light most favorable to him, Plaintiff has failed to state a claim for IIED. Though Plaintiff alleges violations of his FMLA rights, that he was frisked unexpectedly in the workplace, and that he was detained at work against his will, the facts that he alleges do not plausibly establish conduct so extreme and outrageous as to be beyond all possible bounds of decency. *See Eddy*, 715 P.2d at 77. Indeed, the conduct alleged by Plaintiff falls short even of the conduct found not to be extreme and outrageous in *Mirzaie* and *Chance*. In those cases, employers engaged in overt, sexually explicit conduct towards the plaintiff, and in *Mirzaie*, the harassment was repeated. Accordingly, Plaintiff's allegations may constitute FMLA violations

and/or tortious conduct, but cannot be regarded as "atrocious, and utterly intolerable in a civilized community." *See Breeden*, 575 P.2d at 1376 (internal citations omitted). Unlike overt, sexually explicit conduct, or ongoing harassment, the conduct that Plaintiff has alleged cannot be said to rise above the "indignities, threats [and] annoyances" to which liability does not extend. *Id.* Accordingly, Plaintiff's allegations do not meet the extremely high burden of alleging IIED in a workplace setting.

Further, alleged law violations, even physical violations such as assault and battery, do not automatically trigger liability for IIED. *See Starr v. Pearle Vision*, 54 F.3d 1548, 1559 (10th Cir. 1995) ("Absent Oklahoma authority espousing a per se correlation . . . we cannot accept that every assault or battery is necessarily an intentional infliction of emotional distress"); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1218 (10th Cir. 2003) (reversing a grant of summary judgment on a Fourth Amendment unreasonable search claim, but upholding the grant of summary judgment as to the same conduct on an IIED claim). Accordingly, assuming without deciding that Plaintiff has stated a claim for FMLA interference, FMLA retaliation, assault, battery, or false imprisonment, he has not pleaded the "extreme and outrageous" conduct required for an IIED claim.

Finally, even if Plaintiff had alleged conduct that was extreme and outrageous, Plaintiff has failed to allege that he suffered severe emotional distress, as he has alleged only general, conclusory allegations of emotional distress. Plaintiff alleges that Spirit's conduct exacerbated his "mental health disorder, including major depressive disorder." (Doc. 2-2 ¶ 43.) Plaintiff also alleges that Spirit's conduct caused him, among other things, mental distress, embarrassment, humiliation, anxiety, and emotional pain and suffering. (*Id.* ¶ 40). However, he "does not set forth any facts regarding his mental or emotional state, much less distress which 'is so severe that no reasonable man could be expected to endure it.'" *See Robbins Motorsports, L.L.C.*, 2011 U.S.

Dist. LEXIS 59365, *12-13 (internal citations omitted). Accordingly, the Court finds that Plaintiff's IIED claim would fail independently on this ground.

## IV. Conclusion

Plaintiff's Complaint fails to state a plausible claim for IIED. Accordingly, Count Six of Plaintiff's Complaint is **DISMISSED**. Defendant Spirit Aerosystems's Motion to Dismiss Count Six of Plaintiff's Complaint (Doc. 14) is **GRANTED**.

**DATED** this March 30, 2018.

**TERENCE C. KERN**
UNITED STATES DISTRICT JUDGE